UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

PHILLIP WALKER, )
 )
        Plaintiff, )
 )
    v. )   No. 4:04CV787 CAS
 )            (TIA)
JO ANNE B. BARNHART, Commissioner )
of Social Security, )
 )
        Defendant. )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration. All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) for appropriate disposition.

**I.    Procedural History**

Claimant was initially determined to be disabled, effective February 2, 1982, based on the diagnosis of right hemiparesis. (Tr. 42).[1] In the Continuing Disability Review conducted on July 28, 1987, the Social Security Administration found claimant's disability to continue based on bilateral cerebral dysfunction. (Tr. 43-44). In the Social Security Disability Information, the administration apprised claimant that his claim would be reviewed from time to time to verify eligibility of benefits based on disability. (Tr. 56). The Social Security Administration undertook a continuing disability review of claimant's entitlement to Supplemental Security Income payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. and for

---

[1]"Tr." refers to the page of the administrative record filed by the defendant with its Answer (filed August 19, 2004).

Child's Insurance Benefits (Disability) pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., and, upon review, determined claimant was no longer disabled as of March 15, 2002, and his eligibility for benefits was terminated at that time. (Tr. 99-101, 119, 121-29,132-33, 143-44, 145-48).[2] On February 20, 2002, claimant requested reconsideration of the decision to cease payment of his disability benefits. (Tr. 191-98). Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 173-76). On October 22, 2003, a hearing was held before an ALJ. (Tr. 262-85). Claimant testified and was represented by counsel. (Id.). A vocational expert also testified at the hearing. (Tr. 282-84). Thereafter, on November 10, 2003, the ALJ issued a decision denying claimant's claims for benefits. (Tr. 12-22). After considering the contentions raised in the letters of claimant, his counsel, and Dr. Acharya, the Appeals Council found no basis for changing the ALJ's decision and denied claimant's request for review of the ALJ's decision on April 22, 2004. (Tr. 7-9, 250-57). The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Hearing on October 22, 2003

#### 1. Claimant's Testimony

At the hearing on October 22, 2003, claimant testified in response to questions

---

[2] The record reflects that claimant initially filed applications for supplemental security income payments and child's insurance benefits on April 30, 1982 and was awarded benefits based on right hemiparesis meeting the criteria of Section 11.18 of 20 C.F.R. pt. 404, subpt. P, app.1 . (Tr. 16, 42). On October 2, 1998, the Commissioner found claimant's disability to continue. Upon subsequent review, claimant's impairments were found to be no longer disabling and on January 15, 2002, the Commissioner notified claimant that his benefits would terminate as of March 15, 2002. (Tr. 16, 145-48). The administration justified the cessation of claimant's benefits in the Explanation of Determination dated January 9, 2002, by finding claimant is capable of performing a wide range of work-related activities including furniture rental consultant, usher, and counter clerk based on medical improvement. (Tr. 133).

posed by the ALJ, counsel, and the vocational expert. (Tr. 263-84). At the time of the hearing, claimant was forty two years of age, and his date of birth is February 9, 1961. (Tr. 265). Claimant is right-handed and five feet ten inches tall and weighs 185 pounds. (Tr. 265, 279). Claimant is single and has no dependent children and lives with his mother in her house in St. Louis. (Tr. 266). Claimant graduated from college with a Bachelor's Degree in Business Administration. (Tr. 267). Claimant testified that he receives disability SSI payments as the only source of income. (Tr. 274).

Claimant started taking classes through vocational rehab in 1988 at Forest Park and then at UMSL. (Tr. 275). Claimant testified that he experienced memory problems as well as problems taking notes while listening to the instructor. Claimant completed his degree in 1998 after receiving assistance from students involved in a student organization. (Tr. 275).

Claimant testified that he has not worked since leaving his last job in 2002, working a copying machine for two to three weeks. (Tr. 267-68). Prior to that job, claimant obtained work through a temp agency doing collection work. (Tr. 268). In 2001, two to three weeks is the longest period of time claimant worked for one entity. (Tr. 268). Claimant worked at Leading Man as a full-time sales person from 1996 through 1998 as part of a required internship program for school and continued to work part time until 2000. (Tr. 268-69). Claimant worked at UMB Bank as a teller for three weeks and for St. Louis Community College as a part-time student job in 1989. (Tr. 270). Claimant testified that the physical strain and his inability to keep up forced him to stop working. (Tr. 271). Claimant attributed his inability to maintain working due to his disability including his leg, lack of energy, lack of movement in his hand, and problems retaining information. (Tr. 280).

Claimant could not recall the name of his current doctor at Forest Park Hospital Clinic. (Tr. 271). At the time he stopped working, claimant explained how he was "trying to find physical therapy." (Tr. 271). Claimant testified that the doctors at the hospital represented to him they could help him physically as well as the neurological side. (Tr. 271). Claimant has been treated for a neurological injury in 1982 with physical therapy. (Tr. 272). Claimant admitted that the doctors have not limited any of his activities including how long he sits. (Tr. 272). Claimant further testified that he has problems hearing in his left ear because after the shooting, the doctor reconstructed his eardrum so he feels vibrations but does not actually hear from that ear. (Tr. 278-79). After twenty years of hearing out of his right ear, claimant testified that he has adjusted to hearing with only one ear, and he could hear the judge during the hearing. (Tr. 279). Claimant testified that he has problems retaining names, directions, dates, and general information. (Tr. 281). In order to remember information, claimant has to reread materials. (Tr. 281).

Claimant testified that driving or sitting for fifteen to twenty minutes causes pain, numbness, and stiffness in his lower back around the hip area and numbness in his legs. (Tr. 266-67, 276). If claimant stretches or moves, he rates his back pain at a five but sitting too long causes extreme pain. (Tr. 276). Claimant cited leg numbness and back pain as his impairments. (Tr. 272). Claimant testified that the numbness on his right side prevents him from using his right hand for eight hours a day on a consistent basis. (Tr. 279-80). Using his right arm and hand too much causes numbness and weakness. (Tr. 280). Claimant testified that he can stand for ten to fifteen minutes without use of cane or leaning on a wall. (Tr. 276). Claimant testified that he can walk maybe fifty feet without using a cane and half block before having to lean on something. (Tr. 276-78). After twenty minutes, claimant has to lean against a wall to maintain balance. (Tr.

277).  Claimant testified that he has problems bending and stooping, because he cannot maintain his balance and he could not get up without having to push against something.  (Tr. 278).  Claimant testified that he could lift ten to fifteen pounds but not on a consistent basis throughout the day.  (Tr. 278).  Claimant testified that for six months after the shooting in 1982, he had to be in a wheelchair.  (Tr. 278).

Claimant testified that his treating doctor referred him for treatment by a neurologist at Forest Park Hospital, but he could not recall the neurologist's name.  (Tr. 273).  Claimant explained as treatment he receives something similar to acupuncture, but he experiences no relief from his symptoms.  Claimant testified that he takes medication for pain and sleep, and experiences no side effects from the medications.  (Tr. 273-74).  Claimant testified that the medications help, but that the pain medication makes him sleepy.  (Tr. 274).

As to his daily activities, claimant testified that he begins his day with stretching exercises to help prevent arthritis.  (Tr. 274).  Claimant testified that he spends a lot of time in the library as well in the gym trying to physically rehabilitate himself.  Claimant explained how he has tried to physically rehabilitate himself for the last twenty years and how he is doing better.  Claimant testified that he does limited housework and any cooking consists of using the microwave.  (Tr. 274).

### 2. Testimony of Vocational Expert

Vocational Expert James Israel, a vocational rehabilitation counselor/consultant, listened to the testimony during the hearing and reviewed the vocational evidence in the file. (Tr. 235, 282).  Mr. Israel determined that claimant does not have any past relevant work.  (Tr. 282-83).  The ALJ asked Dr. McGowan to assume the following:

> [Y]ou have a Claimant of the same age and education as our Claimant, that person has no past relevant work. They have a light RFC but they're further limited in that they should avoid concentrated exposure to hazardous machinery and heights and also avoid concentrated exposure to noise. They should also never be required to climb ramps or stairs, ladders, ropes or scaffolds, avoid all climbing and they have communicative limitations in that they have decreased hearing in their left ear. Just with that combination of impairments, would you be able to cite any jobs in the statistical area that include St. Louis?

(Tr. 283). Mr. Israel opined that claimant would be able to perform jobs in the unskilled range of work activities such as assembly and production jobs, in the sedentary to light range, product inspector, checker, examiner, hand packer, and wrapper. Mr. Israel further opined that claimant could perform some general, clerical jobs requiring sorting and filing where the ability to communicate is not so important because the hypothetical allowed some latitude for manual functioning in those ranges. (Tr. 283).

The ALJ then asked Mr. Israel to assume that claimant suffers from hand numbness of the upper extremity limiting his ability to do repetitive motions with the dominant hand. (Tr. 284). Mr. Israel opined that such claimant would not be able to perform the jobs cited by him based on the additional assumption. (Tr. 284).

### 3. Open Record

During the hearing, the ALJ requested claimant's counsel to submit an updated list of claimant's medications. (Tr. 273, 284). The ALJ stated that the record would be held open for thirty days so that counsel could submit the updated medication list. (Tr. 284). A review of the record shows that counsel timely submitted such evidence to the ALJ before she issued the decision. (Tr. 245-49).

### 4. Forms Completed by Claimant

In the Report of Continuing Disability Interview dated June 14, 2001, claimant cited slight paralysis in his right leg and hearing impairment in his left ear as his disabling conditions. (Tr. 76). Claimant indicated that he felt he was able to return to work. (Tr. 76). In the Claimant's Statement When Request for Hearing is Filed, claimant listed Ibuprofen as his only medication. (Tr. 182-83). In the Claimant Questionnaire Supplement, claimant listed walking, lifting weights (bench press), and stretching as his forms of exercise. (Tr. 188).

In the Disability Hearing Officer's Report of Disability Hearing dated May 15, 2002, claimant reported waking early to look for jobs on the internet and going to the library to check job resumes. (Tr. 152-62). Claimant returns home around noon to watch some television, to attend to personal hygiene, and to complete household chores. (Tr. 156). In the evening, claimant spends time on the internet or socializes. (Tr. 156). The officer noted that claimant walked with an exaggerated gait when entering the interview but that when leaving, the officer observed claimant's gait to be less of a problem. (Tr. 161).

### III.  Medical Records

On September 20, 1988, Dr. Alywin Kluttz examined claimant on referral by disability determinations. (Tr. 58-63). Claimant reported being in good health until February 2, 1982 when he was shot multiple times in the head and the left facial region. (Tr. 58). Claimant reported initially being completely paralyzed and being in a wheelchair for several years after the incident. With progressive physical therapy, claimant regained almost all of his strength on the left side but still has residual weakness and clumsiness on his right side. Claimant is able to walk a short distance wearing a brace on his right foot but has difficulty going up and down uneven surfaces. Claimant reported not being under the care of a physician at that time. (Tr. 58).

Claimant reported problems with his memory since the incident especially with recent memory causing problems with classes at school. (Tr. 59). Claimant had been prescribed Dilantin, but he stopped taking the medication on his own. Claimant reported occasional discomfort in his lower back caused by his right leg being shorter than his left leg. Claimant reported difficulty with lifting, bending, and pushing type activities. (Tr. 59). The physical examination revealed that claimant's right leg is two centimeters shorter than his left leg and decreased range of motion of right hip. (Tr. 60). Dr. Kluttz noted that claimant has a full range of motion of his back and a clumsy, unsteady gait tending to favor his right lower extremity. (Tr. 61). As his diagnosis, Dr. Kluttz listed post-traumatic head injury, right-sided palsy, left ear trauma, questionable seizure history, and chronic back discomfort. (Tr. 62). Dr. Kluttz noted that although claimant reported problems with memory related to head trauma, he questioned how significant or compromising the problem was in light of the fact that claimant is able to function in school. Dr. Kluttz opined that claimant would be limited with respect to walking, standing, climbing, squatting, stooping, and other similar tasks and activities due to shortened right lower extremity. Dr. Kluttz noted that claimant had no difficulty with conversational speech during the evaluation. With respect to claimant's frequent back discomfort, Dr. Kluttz opined that claimant's discomfort is probably related to his leg length discrepancy, and he would have difficulty with tasks and activities requiring frequent bending, heavy lifting, and prolonged standing. (Tr. 62).

On January 18, 2001, claimant received treatment at Washington University Clinics for incontinence. (Tr. 207-10).

On November 3, 2001, Dr. Riaz Naseer, a neurologist, examined claimant on referral by disability determinations. (Tr. 211-16). Claimant reported the diagnosis of right

hemiparesis stemming from a gun shot wound to his brain in February, 1982. (Tr. 211). Claimant cited as his chief complaint as paralysis in the right lower extremity and a hearing impairment on the left side. Claimant reported not taking any medications during the examination. (Tr. 211). The neurological examination revealed recent and remote memory to be intact. (Tr. 212). Dr. Naseer noted how claimant was able to ambulate independently without any assistance device. Dr. Naseer determined that claimant could perceive soft sounds on the right side, but he was unable to hear on the left side. (Tr. 212). In the Clinical Impression section, Dr. Naseer found that claimant's range of motion to be perfectly normal on either side, as well as his ability to use both hands for writing and using small tools and parts. (Tr. 213, 215-16). Dr. Naseer noted that claimant is able to understand simple communication and has no difficulties in carrying on a conversation. Dr. Naseer further noted that claimant is able to ambulate independently without an assistive device, and he does not require use of a cane or a crutch. (Tr. 213).

   In the Physical Residual Functional Capacity Assessment completed on January 9, 2002, Dr. Melinda Fabito listed hearing loss in left ear as claimant's primary diagnosis and slight residual weakness on right side as claimant's secondary diagnosis. (Tr. 135-42). Dr. Fabito indicated that claimant has no exertional limitations. (Tr. 136). Dr. Fabito found claimant to have a postural limitation preventing him from climbing stair and ladders. (Tr. 137). Dr. Fabito based her conclusions on claimant's inability to hear warnings while engaged in activity. (Tr. 137). Dr. Fabito found claimant not to have any manipulative or visual limitations to be established. (Tr. 138). Dr. Fabito found claimant's communicative limitation to be inability to hear in his left ear but not limitation with respect to speaking. (Tr. 139). Dr. Fabito noted environmental limitations to include noise and hazards inasmuch as claimant would not be able to hear warnings of danger if

the noise level was high, or if he was involved in an activity in unprotected heights. (Tr. 139). In the symptoms section, Dr. Fabito opined that the severity of claimant's symptoms are disproportionate based on his medically determinable impairments. (Tr. 140). In support, Dr. Fabito cited how claimant is able to do his own shopping, cleaning, laundry, and manage money without assistance as well as go to work and drive a car. (Tr. 140).

On June 27, 2003, a doctor at Forest Park Hospital prescribed physical therapy for claimant. (Tr. 224-26).

In the Physical Therapy Initial Evaluation at The Center for Sports Medicine and Physical Therapy at Forest Park Hospital on July 7, 2003, claimant reported right shoulder and leg pain and muscle spasms. (Tr. 221). The examining therapist prescribed physical therapy as treatment. Claimant reported having physical therapy the year before and the therapy helping. Claimant reported throbbing, aching pain especially after a lot of exercise with improvement after taking Ibuprofen. (Tr. 221). The therapist provided claimant with a home exercise program. (Tr. 222). Claimant returned for physical therapy treatment sessions on July 11 and 14, 2003. (Tr. 223).

On August 21, 2003, an MRI of claimant's brain revealed multiple defects at the top of the calvarium, likely iatrogenic in nature with no acute intracranial process noted. (Tr. 236). The MRI of claimant's left spine revealed a mild diffuse bulging disc at L5-S1 and minimal hypertrophy of the ligamentum flavum, causing minimal flattening of the anterior thecal sac. (Tr. 237). The MRI of claimant's C-spine revealed no fracture or subluxation. (Tr. 238).

In a letter dated December 18, 2003, Dr. Aninda Acharya summarized claimant's case at claimant's request. (Tr. 255-56). Dr. Acharya first examined claimant on August 11,

2003. (Tr. 255). Claimant reported neck and back pain, chronic in nature and starting in 1982 from a gunshot wound. Dr. Acharya prescribed medication for claimant's pain and also a script for physical therapy evaluation. Dr. Acharya discussed claimant's MRI results from August 21, 2003. (Tr. 255). Dr. Acharya opined as follows:

> In summary, Mr. Walker is a 42-year old gentleman who suffered a gunshot wound with what appears to residual bullet fragments at the angle of the jaw and surgical lesion in the skull. As a result he had significant damage to the left hemisphere of his brain, which has caused a right hemiparesis. As far as his ability to do his activities of daily living and his ability to walk, I am having physical therapy evaluate this and give me better guidance as to whether he has significant impairments in these areas.

(Tr. 256).

In claimant's Prescription Profiles dated February 24, 2002, through June 8, 2003, and July 14, 2002, through October 25, 2003, the following medications are listed: acetaminophen with codeine, penicillin, propoxyphene, amoxicillin, neomycin/polymyxin, guaifenesin, skelaxin, hydrocodone, cyclobenzaprine, cheratussin, naproxen, ibuprofen 400mg and 800mg tablets, profen forte tablets, cyclosenaprine, and naproxen. (Tr. 240-44, 246-49).

In a letter dated January 14, 2004, claimant's counsel submitted additional medical evidence from claimant's treating physician, the letter from Dr. Acharya, in support of his contention that claimant's condition has not medically improved. (Tr. 250-51). In addition, claimant submitted a letter dated November 17, 2003, challenging the consulting physicians' findings. (Tr. 252-54).

## IV.    The ALJ's Decision

The ALJ found that claimant has not engaged in substantial gainful activity since January 15, 2002, the proposed termination date of his disability status. (Tr. 20). The ALJ found

that the medical evidence establishes that claimant has had mildly diminished motor strength, weakness, and reflex loss on the right side compared to the left side, and a mild loss to soft sounds in his left ear, but no longer any impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20-21). The ALJ found that claimant's allegation of impairments, either singly or in combination, producing symptoms and limitations of sufficient severity precluding all substantial gainful activity beyond January 15, 2002, are not credible for the reasons set forth in her decision. (Tr. 21). The ALJ found that since January 15, 2002, claimant has had the residual functional capacity for a full range of at least light-sedentary work with lifting and carrying limited to no more than ten pounds frequently, twenty pounds occasionally, and climbing or working around hazardous machinery. The ALJ further found that the medical evidence establishes that there has been improvement in claimant's medical impairments since October 2, 1988, and the improvement is related to his ability to work. The ALJ noted that claimant is a younger individual and a college graduate  The ALJ found that claimant probably has no past relevant work and has no acquired or usable skills transferable to the skilled or semiskilled functions of other work. (Tr. 21).

Based on claimant's exertional functional capacity for light work in combination with his age, education, and work experience, the ALJ opined that claimant is not disabled as of January 15, 2002. (Tr. 21). Considering claimant's limitations not allowing him to perform the full range of light-sedentary work, the ALJ opined that the vocational expert credibly testified that claimant could work as an assembler, packer, and general clerical worker and that such jobs exist in significant numbers in the local and national economies in addition to a total of about 5,100 unskilled jobs in the St. Louis Standard Metropolitan Statistical Area. (Tr. 21). The ALJ thus

concluded that claimant's disability ceased on or about January 15, 2002. (Tr. 22).

**V.     Discussion**

Court review of an ALJ's determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court may not reverse merely because opposing substantial evidence exists in the record or because the Court would have decided the case differently so long as substantial evidence supports the final decision. Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). Likewise, the Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ erroneously found that claimant's previously disabling impairment had medically improved and that his improvement is related to his ability to work thus finding claimant capable of performing work in the national economy and terminating his disability and SSI benefits.

A.     <u>The ALJ's Determination that Claimant's Previously Disabling Impairment Had Medically Improved</u>

The Social Security regulations delineate an eight-step sequential evaluation process for reviewing whether a disability recipient is entitled to continued benefits. 20 C.F.R. §§ 404.1594(a), 416.994(a); <u>Mittlestedt v. Apfel</u>, 204 F.3d 847, 852 (8th Cir. 2000) (under § 404.1594, claims must be reviewed periodically to determine if medical improvement has resulted in claimant's ability to work again; determination must be made without reference to disability status based on prior finding of disability). A finding of disability or no disability at any step renders further evaluation unnecessary. In relevant part, the regulations for determining whether a claimant's disability has ceased involves up to eight steps as follows:

1. Is the individual engaged in substantial gainful activity?

2. If the individual is not engaged in substantial, gainful activity, does he have an impairment or combination of impairments meeting or equaling the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?

3. If the individual does not have an impairment meeting or equaling a listing, has there been medical improvement in his condition?

4. If there has been medical improvement, is it related to the individual's ability to work?

5. If the individual has no medical improvement or if the medical improvement is not related to his ability to work, do any of the exceptions noted in 20 C.F.R. § 404.1594(d), (e) apply? If none of them apply, the individual's disability will be found to continue.

6. If medical improvement is shown to be related to the individual's ability to do work or if one of the first group of exceptions applies, are the individual's current impairments severe?

7. If the individual's impairments are severe, can he engage in past, relevant work?

8. If the individual cannot engage in past, relevant work, can he engage in other work in the national economy?

20 C.F.R. §§ 404.1594(f), 416.994(f). The regulations define medical improvement as a decrease

in the medical severity of the impairments at the time of the most recent favorable medical decision that an individual was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1). Medical improvement is determined by a "comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. §§ 404.1594(c)(1), 416.994(c)(1) (discussing the SSA's determination of medical improvement and its relationship to a person's abilities to do work).

The claimant in a disability benefits case has a continuing burden to demonstrate that he is disabled, and no inference is to be drawn from the fact that he has previously been granted benefits. Matthews v. Eldridge, 424 U.S. 319, 336 (1976); 20 C.F.R. §§ 404.1594(b)(6), 416.994(b)(6). To terminate disability benefits due to an improvement in the claimant's medical condition, the Commissioner must demonstrate that the conditions which previously rendered the claimant disabled have ameliorated, and that the improvement in the physical condition is related to claimant's ability to work. 20 C.F.R. § 404.1594(b)(2)-(5); Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001). Whether a claimant's condition has improved is primarily a factual inquiry, generally determined by assessing witnesses' credibility, a responsibility particularly given to the trier of fact. Nelson v. Sullivan, 946 F.2d 1314, 1316 (8th Cir. 1991). If substantial evidence supports the decision then it must be upheld. Id. at 1315 (evidence sustained finding of improved medical condition; evidence sustained decision that recipient could perform jobs in the national and local economy). *Accord* Muncy, 247 F.3d at 734 ("Whether a claimant's condition has improved is primarily a question for the trier of fact, generally determined by assessing witnesses' credibility.")

The ALJ first determined that claimant has not been engaged in substantial gainful work activity. After comparing the prior and current medical evidence, the ALJ in the next step concluded that claimant did not meet the requirements of any impairment included in the Commissioner's listing of impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. Inasmuch as claimant does not contest the ALJ's determination that his impairment did not meet the severity requirements of any listed impairment, the remaining issue is whether claimant's impairment had medically improved and whether that improvement was related to his ability to work. In 1988, claimant was found to have a continuing disability based on his condition continuing to meet the requirements of listing 11.18. The ALJ determined that "[t]he medical evidence no longer establishes any impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in 20 CFR pt. 404, subpt. P, app. 1." (Tr. 17). Accordingly, a medical improvement has occurred and is deemed to be related to claimant's ability to work inasmuch as claimant was previously found to be disabled pursuant to a listing, but the ALJ found claimant's condition no longer meets or equals the same listing section used to make the most recent favorable decision. 20 C.F.R. § 404.1594(c)(3)(I).

Claimant contends that the ALJ based her determination of medical improvement on the consultative evaluation of Dr. Naseer, the CT scan, and physical therapy notes without developing the record by requesting additional information from claimant's treating physician, Dr. Acharya. Nonetheless, a review of the evidence fails to show how the treating physician's general diagnosis of right hemiparesis and brain damage satisfy any criteria of listing 11.18. Claimant fails to explain how that evidence demonstrates that he continued to meet the requirements of listing 11.18 or any other listed impairment. Listing 11.18 mandates a finding of disability for an

individual who has suffered cerebral trauma and satisfies the criteria of Listings 11.04 and 12.02, as applicable. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.18. Accordingly, the ALJ's finding that the claimant has failed to meet a listing is supported by substantial evidence and the record appears to be uncontroverted that the requirements of 11.18 have not been met. Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990). See Deckard v. Apfel, 213 F.3d 996, 997 (8th Cir. 2000) (to show that claimant's impairment matches a listing, the impairment must meet all of the specified medical criteria).

The ALJ recognized her burden under § 404.1594(f)(7) to establish that claimant could return to work and properly sought the expert testimony of a vocational expert to satisfy her burden and duty. Before terminating disability benefits, the ALJ had to make findings demonstrating that claimant has medically improved to the point that he is able to perform either his past relevant work or other work existing in significant numbers. 20 C.F.R. § 404.1594(f)(7), (8). The ALJ found that claimant is capable of performing sedentary-light work not requiring climbing or working around hazardous machinery. The vocational expert opined based on claimant's capabilities and limitations, claimant could perform a total of 5,100 unskilled jobs in the St. Louis Standard Metropolitan Statistical Area as an assembler, packer, and general clerical worker. Claimant's contention that the ALJ erred by not comparing the RFC from the last favorable medical determination to the current RFC is without merit inasmuch as no RFC was made at the time of the last favorable medical determination because claimant was found to have a continuing disability based on his condition continuing to meet the requirements of listing 11.18. (Tr. 54-55).

The substantial evidence on the record as a whole supports the ALJ's decision.

Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Woolf, 3 F.3d at 1213 (quoting Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992)).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). Accordingly, the decision of the ALJ denying claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that claimant's complaint be dismissed with prejudice.

The parties are advised that they have eleven days in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal the questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

        /s/ Terry I. Adelman  
UNITED STATES MAGISTRATE JUDGE

Dated this  9th  day of August, 2005.